UNITED STATES of America, Appellee,

v.

Arnold Wayne RIVERS, Appellant.

No. 90–5029.

United States Court of Appeals, Eighth Circuit.

Submitted June 11, 1990.

Decided Oct. 18, 1990.

**370**

Robert A. Sambroak, Jr., Kodoka, S.D., for appellant.

David L. Zuercher, Pierre, S.D., for appellee.

Before LAY, Chief Judge, HEANEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

LAY, Chief Judge.

The defendant, Arnold Wayne Rivers, pleaded guilty to second-degree burglary in violation of 18 U.S.C. § 1153 (1988), and was sentenced to 27 months imprisonment. He appeals the district court's [1] one-level enhancement of his sentence based on its determination that the value of the stolen property involved was greater than $2,500. *See* United States Sentencing Commission, *Guidelines Manual,* § 2B2.1(b)(2)(B) (Nov. 1989). We remand for further proceedings.

## BACKGROUND

In May 1989, the residence of Gay Kingman in Eagle Butte, South Dakota, was burglarized. Reported missing were various items of personal property including a nineteen inch television, microwave oven, cassette player, assorted jewelry, blankets, quilts, jewelry boxes, beadwork, and an unknown amount of cash. Rivers eventually pleaded guilty to the crime.

At the time the guilty plea was entered as part of a plea agreement the court explained to the defendant that the length of the sentencing would depend upon the Presentencing Investigation Report and the Sentencing Guidelines. The court informed the defendant that he would have the right to challenge any factual statement within the PSI. At the time of the plea agreement, the government did not assert that it was claiming the value of the goods exceeded $2,500.00 so that Rivers' base offense level might be increased from base level 17.

The Presentencing Investigation Report stated that Ms. Kingman estimated the property stolen to have a value between $3,000–$4,000. On this basis, since the value of the property was deemed to have a value greater than $2,500 but less than $10,000, the base offense level would be enhanced by one level pursuant to section 2B2.1(b)(2)(B) of the Guidelines.[2] The court gave the defendant a two point reduction for the defendant's acceptance of responsibility. However, the one point increase raised the base level from 15 to 16

---

**1.** The Honorable Donald J. Porter, United States District Judge for the District of South Dakota.

**2.** This section provides in part:

(2) If the loss [to the victim] exceeded $2,500, increase the offense level as follows:

| Loss | (Apply the Greatest) | Increase in Level |
|------|----------------------|-------------------|
| (A) | $2,500 or less | no increase |
| (B) | More than $2,500 | add 1 |
| (C) | More than $10,000 | add 2 |
| * * *. | | |

U.S.S.G. § 2B2.1(b)(2).

resulting in an increase in the Guidelines' sentencing range from 21–27 months to 24–30 months.

Before sentencing the defendant lodged an objection to this valuation and urged that the value of the property was not over $2,500. At the sentencing hearing, and over the hearsay objection of Rivers, the court received the testimony of Mitch Pourier, the Criminal Investigator responsible for investigating the crime. He testified that since the date of the burglary Ms. Kingman had been temporarily reassigned out of state and was unavailable to testify at the sentencing hearing. Thus, he had called Ms. Kingman over the phone and received her estimates (what she "thought * * * they were worth") on the value of the stolen property. The court also received into evidence the list Pourier compiled during this conversation, documenting the items stolen during the burglary with an estimated value for each item.[3] The values on the list were based solely on unsupported estimates made by Ms. King-man and given to Pourier during the phone conversation Pourier had with her prior to defendant's sentencing. The value of Ms. Kingman's estimates, taken by officer Pourier over the phone, totaled $4,055.[4]

In considering the appropriateness of an enhancement under section 2B2.1, the district court found that since most of the stolen items had not been recovered, determining the market value of the items would be difficult.[5] It then looked to South Dakota law which allows the owner of property to give an opinion as to its value. It noted that the victim in this case "is a person of some standing, educational standing, intellectual standing in that she was * * * president of the Cheyenne River Sioux Tribal College at the time [of the burglary] * * *, [and had] standing in the community." Sent. Tr. p. 9. The court found that the estimates received by Pourier from Ms. Kingman were reasonably reliable and determined the value of the loss to be $3,500. Since the loss was greater than

3. The list provides:

| Item | Estimated Value |
|---|---|
| 1. One large mens bearclaw ring—bearclaw w/turquoise stone on both sides | $500 |
| 2. One ring w/long turquoise bar | $150 |
| 3. One ring w/two circles of turquoise | $150 |
| 4. One turquoise pinky ring | $ 75 |
| 5. One chipped turquoise in laid in coral ring—wrap around type | $150 |
| 6. Matching bracelet to item # 5 | $150 |
| 7. One all turquoise bracelet | $100 |
| 9. [sic] Six beaded medallions—assorted colored beads given to her by grandmother. App. $40. Sentimental value—not replaceable | $240 |
| 10. Four sets of beaded cufflinks—assorted colored beads. $30 a set | $120 |
| 11. Four sets of beaded tie tacs—assorted colored beads. $30 a set | $120 |
| 12. Large Jewelry Box 12 × 6 × 8 | $ 30 |
| 13. Small Jewelry Box 4 × 6 | $ 30 |
| 14. Six sets of turquoise/coral earrings. $30 a set | $180 |
| 15. Fourteen sets of assorted colored beaded earrings $10 a set | $140 |
| 16. One beaded belt w/Chippewa Indian design, $70, w/turquoise belt buckle, $30 | $100 |
| 17. One blue/pale blue beaded belt—tie belt | $ 50 |
| 18. One hundred silver dollars | $100 |

| Item | Estimated Value |
|---|---|
| 19. One blue pendleton blanket | $100 |
| 20. Two star quilts, one blue green colored, one pink colored, $100 a piece | $200 |
| 21. One 19 inch Zenith television set | $600 |
| 22. One Amana microwave oven | $450 |
| 23. Toshiba cassette stereo/recorder | $120 |

Appendix Government's Brief pp. 1–3.

4. Only the microwave oven and cassette player were recovered and the only receipt provided to authorities was for the microwave oven stating a value of $443.02. Ms. Kingman indicated that many of the items were gifts so that she did not have receipts for their purchase.

5. In making this determination the court was considering the comments to section 2B1.1 which state in part:

"Loss" means the value of the property taken, damaged, or destroyed. Ordinarily, when property is taken or destroyed the loss is the fair market value of the particular property at issue. Where the market value is difficult to ascertain or inadequate to measure harm to the victim, the court may measure loss in some other way, such as replacement cost to the victim. * * * The loss need not be determined with precision, and may be inferred from any *reasonably reliable information* available, including the scope of the operation.

U.S.S.G. § 2B1.1, comment (nn. 2 & 3) (emphasis added).

$2,500 but less than $10,000, the court enhanced Rivers' base offense level one level. The court then sentenced Rivers to 27 months.

## DISCUSSION

■ Rivers argues that the government failed to prove the value of the stolen property by a preponderance of the evidence and thus the district court's enhancement by one level under section 2B2.1(b)(2)(B) was clearly erroneous. The government argues that the opinion of an owner as to the value of stolen property that remains unrecovered bears sufficient indicia of reliability to warrant its use at sentencing. Of course each case must withstand individual factual and legal analysis. Ordinarily we would not set aside a trial court's finding of value since the surrounding circumstances will generally provide sufficient support for the trial court's finding to uphold it under the clearly erroneous rule. However, where the foundational basis for the hearsay opinion evidence is highly speculative, as we find it to be here, we deem further evidence necessary in order for the government to sustain its burden of proof.

■ Generally, a sentencing court may consider any and all information in sentencing a defendant. *See* 18 U.S.C. § 3661.[6] Further, this court has held that "[u]ncorroborated hearsay evidence contained in a presentence report may be considered by the sentencer provided the persons sentenced are given an opportunity to explain or rebut the evidence." *United States v. Evans*, 891 F.2d 686, 688 (8th Cir.1989) (citing *United States v. York*, 830 F.2d 885, 893 (8th Cir.1987) (per curiam), *cert. denied*, 484 U.S. 1074, 108 S.Ct. 1047, 98 L.Ed.2d 1010 (1988)), *cert. denied*, — U.S. ——, 110 S.Ct. 2170, 109 L.Ed.2d 499 (1990); *but see United States v. Fortier*, 911 F.2d 100, 103–04 (8th Cir.1990) (reliance on triple hearsay contained in Presentencing Investigation Report violated confrontation clause).

Section 6A1.3(a) of the Guidelines states in part:

> In resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissability under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.

U.S.S.G. § 6A1.3(a), p.s.

In support of its argument the government cites numerous state cases for the proposition that an owner's testimony as to the value of their property is admissible evidence. *See, e.g., Farmers State Bank of Leeds v. Thompson*, 372 N.W.2d 862 (N.D.1985); *Kristensen v. Reese*, 220 Neb. 668, 371 N.W.2d 319 (1985); *Gross v. Connecticut Mut. Life Ins. Co.*, 361 N.W.2d 259 (S.D.1985). We agree with the government that in general, the owner of property may testify as to the value of her property. *Id.; see also Greenwood Ranches, Inc. v. Skie Constr. Co.*, 629 F.2d 518, 522 (8th Cir.1980); *Meredith v. Hardy*, 554 F.2d 764, 765 (5th Cir.1977). However, contrary to supporting the government's argument in this case, we find these cases support a reversal of the district court's sentence. In all of the cases cited by the government the owner of the property was present in court, was subject to full direct and cross examination, and the basis of the owner's testimony was presented to the fact finder.

■ Although an owner's hearsay opinion as to the value of property may be considered for sentencing purposes, such evidence should not be based on hypothesis, conjecture, or speculation alone. *See Dietz v. Consolidated Oil & Gas, Inc.*, 643 F.2d 1088, 1093–94 (5th Cir. April 27) (lessee of surface rights could give opinion as to value of crops destroyed by flooding because it was not merely hypothesis, conjecture or speculation), *cert. denied*, 454 U.S. 968, 102 S.Ct. 513, 70 L.Ed.2d 385

---

**6.** This section provides: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

(1981); *Rich v. Eastman Kodak Co.*, 583 F.2d 435, 437 (8th Cir.1978) (owner must present factual basis for opinion regarding value of property); *Kestenbaum v. Falstaff Brewing Corp.*, 514 F.2d 690, 698 (5th Cir.1975) (valuation of property by owner may not be based on speculative factors alone), *cert. denied,* 424 U.S. 943, 96 S.Ct. 1412, 47 L.Ed.2d 349 (1976); *Klapmeier v. Telecheck Int'l, Inc.,* 482 F.2d 247, 253 (8th Cir.1973) (valuation of property was based on speculation and thus could not support jury award of damages). While these cases relate to damages and jury valuations, we find the propositions articulated to be applicable to this case for they enunciate principles relevant to determining the reliability of an owner's valuation of lost or damaged property.

It is always difficult to lay down mechanical rules governing the reliability of hearsay evidence. However, in a completely different context, the United States Supreme Court has recently stated that the reliability of hearsay evidence must be measured in terms of trustworthiness under the "totality of the circumstances." *See Idaho v. Wright,* ── U.S. ──, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990) (testimony of pediatrician rejected as unreliable as to hearsay provided by young child in child abuse case).

Here, Ms. Kingman's opinion regarding the value of her property was not admitted into evidence pursuant to her own testimony but was presented by way of the officer who spoke with her over the phone. She was not available for cross examination. Under the circumstances we feel the government carried a greater burden to establish a foundation as to valuation opinion which may be used to enhance an individual's prison sentence. Mere conjecture should not suffice. There was no reasonable factual basis given as to the reliability of her opinion. The district court relied heavily on the fact that the victim was well educated and the president of the local college. While this fact was properly considered, it does not support a conclusion that the victim's estimates are accurate. Even a good faith estimate is insufficient

to support an increase in a defendant's sentence where the estimate has little factual foundation and is mere speculation.

This is not to say that the owner of stolen property must in each case appear at the sentencing hearing. However, the issue here is not the availability of the witness for cross-examination, but the reliability of the owner's valuation opinion. In the present case her testimony reflects that many of the items were gifts. Thus there has been no evidence as to knowledge of purchase price or appraisal of replacement cost or other substantial objective and articulable judgment as to the fair market value. In some instances the valuation is based purely on sentimental value. In contrast, where the owner has some accurate recollection as to the purchase cost of the unrecovered stolen items or other substantial objective and articulable judgment as to fair market value, the owner's opinion may be reliable enough to support an enhancement. The investigator or owner could corroborate the estimate by verifying replacement costs with reliable dealers. We find the burden of making these additional inquiries to be slight when compared with the prospect of enhancing a defendant's sentence on the sheer speculation of the owner as to the value of stolen property.

The Guidelines allow the district court to consider reasonable market value or replacement cost. U.S.S.G. § 2B1.1, comment (nn. 2 & 3). Thus, even if no reasonable market value could be determined, a replacement cost could easily have been verified simply by consulting with a reliable dealer. We conclude that this type of unsubstantiated evidence, by itself, is an insufficient basis on which to increase the length of time a defendant will spend incarcerated. When the trial court is faced with sentence enhancement based upon hearsay evidence, we deem it advisable that the trial court exercise a more searching inquiry which may or may not serve to provide sufficient corroborating evidence to support the government's claim. As indicated, each case must stand on its own circumstance; however, where the hearsay opinion is totally uncorroborated and ap-

pears to be facially conjectural we deem it incumbent on the government, in order to carry its burden of proof, to do more than it did here.

We also have difficulty with the way in which the government handled Mr. Rivers' enhancement in this case. On Sunday May 14, 1989, Ms. Kingman notified police that her home had been burglarized. During the investigation, Ms. Kingman estimated the value of her stolen items to be somewhere between $3,000 and $4,000. Thus, at the time the indictment was filed, the United States Attorney knew that the victim alleged the value of the stolen property to be greater than $2,500. However, the indictment merely alleged that property "of a value more than $100" as stolen. Nor did the government make any mention of the victim's alleged loss being greater than $2,500 at the time of Rivers' guilty plea hearing when the range of sentence was discussed.

■ As a supervisory matter, in future cases involving enhanced sentencing under section 2B2.1, we feel in fairness to the defendant, where the government knows it will claim the value of the stolen property to be greater than $2,500 at the time a guilty plea is entered, the fact that an enhancement may be proposed should be disclosed to the defendant. This is especially true in this case, where the enhancement was based solely on the unsupported valuation of the owner. Thus, in the guilty plea hearing we think it incumbent on the government to make known any basis upon which it will urge the base level under the guidelines to be increased for reasons not otherwise disclosed in the indictment.

In conclusion, we find the government has failed to carry its burden of proof by the preponderance of evidence that the valuation of the property was more than $2,500. Under the circumstances we vacate the judgment of sentence and remand the case for further proceedings. The government should be allowed to produce further evidence in order to establish the fair market value of the property in question. In the absence of such evidence the

enhancement of one level should be set aside and the defendant resentenced.